IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Crim. No. 1:19-CR-156 (MAD) |
| | ) | |
| **ZHENG Xiaoqing and** | ) | (Hon. Mae A. D'Agostino) |
| **ZHANG Zhaoxi** | ) | |
| | ) | |
| **Defendants.** | ) | |

## GOVERNMENT'S MOTION FOR A DISCOVERY PROTECTIVE ORDER PURSUANT TO 18 U.S.C. § 1835 AND FEDERAL RULE OF CRIMINAL PROCEDURE 16(d)(1)

The United States of America, by its attorneys, submits this motion filed pursuant to 18

U.S.C. § 1835 and Federal Rule of Criminal Procedure 16(d)(1) that seeks a pre-trial discovery

protective order.

Dated: May 24, 2019

Respectfully submitted,

GRANT C. JAQUITH
UNITED STATES ATTORNEY

BY:     /s/ *Richard D. Belliss*
RICHARD D. BELLISS
Assistant U. S. Attorney
Bar Roll Number: 515295
E-mail:
richard.belliss@usdoj.gov
United States Attorney's Office
James T. Foley U.S. Courthouse
445 Broadway
Albany, N.Y. 12207
Telephone: (518) 431-0247

# TABLE OF CONTENTS

Page

I.    Table of Authorities…………................…………………………………….…iii

II.   Memorandum of Law…………………………..…………………........1

      Background and Relief Requested…………………………………..…….......1

      Argument Summary………......……………………………………………….3

      Legal Analysis……………………… ……………………………..…….…….4

      Conclusion………………………………………………………….…………14

      Certificate of Service……………………………………….…..……………...16

III.  Appendix A (GE Letter to the Court dated May 20, 2019)

# TABLE OF AUTHORITIES

Page

Supreme Court Cases
*Brady v. Maryland*, 373 U.S. 83 (1963)...............................................4

Circuit Courts of Appeals Cases
*Ager v. Jane C. Stormont Hospital & Training, Etc.*, 622 F.2d 496 (10th Cir. 1980) 7
*Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842 (8th Cir. 1988).................7
*In re Grand Jury Proceedings #5 Empaneled January 28, 2004,*
    401 F.3d 247 (4th Cir. 2005)............................................7
*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008).............................4, 5
*United States v. Delia*, 944 F.2d 1010 (2d Cir. 1991)...........................4
*United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990)........................4
*United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998)..............................6
*United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989)........................4
*Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532 (2d Cir. 1974)..............5
*United States v. RMI Co.*, 599 F.2d 1183 (3d Cir. 1979)...........................5

District Court Cases
*Baki v. B.F. Diamond Const. Co.*, 71 F.R.D. 179 (D. Md. 1976).......................7
*Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 Civ. 1559 (RWS),
    2015 WL 4597546 (S.D.N.Y. 2015).........................................7
*Manzo v. Stanley Black & Decker Inc.*, No. CV 13-3963,
    2015 WL 136011 (E.D.N.Y. 2015)..........................................7
*Oregon Health & Science Univ. v. Vertex Pharmaceuticals, Inc.*,
    No. Civ. 01-1272-HU, 2002 WL 31968995 (D. Or. Oct. 24, 2002)....................8
*United States v. Li*, No. 4:13-CR-00147 (S.D. Iowa May 19, 2015)..................9, 12
*United States v. Pani*, No. 08-CR-40034-FDS, 2011 WL 4344336 (D. Mass. 2011)..9, 11, 12
*United States v. Roberts*, No. 3:08-CR-175, 2010 WL 1010000
    (E.D. Tenn. March 17, 2010)..............................................5
*United States v. Sinovel Wind Grp. Co.*, No. 13-CR-84-BBC,
    2014 WL 10920452 (W.D. Wis. 2014)......................................9, 12
*United States v. Xiang*, No. 1:14-CR-160 (M.D.N.C. 2015)........................8, 9
*United States v. Xu*, No. 16-CR-10-KMK (S.D.N.Y. 2016)...........................9
*United States v. Zhang*, No. 13-20134-CM/JPO (D. Kan. 2018)........................9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Government Motion for a Protective Order** |
| **ZHENG Xiaoqing and** | ) | |
| **ZHANG Zhaoxi** | ) | Criminal No.   1:19-CR-156 (MAD) |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, respectfully files this motion for a protective order

pursuant to Title 18, United States Code, Section 1835 and Rule 16(d)(1) of the Federal Rules of

Criminal Procedure, stating as follows:

I.       BACKGROUND AND RELIEF REQUESTED

On April 23, 2019, defendant Zheng ("defendant" or "Zheng") was arraigned on an

Indictment charging him with conspiracy to commit economic espionage, conspiracy to commit

theft of trade secrets, economic espionage, theft of trade secrets, and false statements, all in

violation of Title 18, United States Code, Sections 1831, 1832, and 1001.  Specifically, the

Indictment alleges that the defendant stole and conspired with others to steal certain trade secrets

involving turbine technology from his employer, the General Electric Company ("GE"), to

subsequently establish a competing business in China.

The discovery related to this investigation contains certain information that both the

government and the corporate victim, the General Electric Company, consider to be confidential

and/or trade secrets (hereinafter "sensitive materials"). Accordingly, following the defendant's arraignment on these charges, the government sought to secure a protective order governing the terms of discovery so that GE's sensitive data is afforded appropriate protections during pre-trial discovery.

The government and counsel for the defendant have engaged in good faith negotiations over the terms of a proposed protective order that would govern the terms of discovery. The government and the defense have agreed in principle to a host of terms, but for the terms described in the government's letter to the Court. (*See* Dkt. No. 34). The parties have reached an impasse regarding the conditions that apply prior to authorizing any potential expert witness or consultant or fact witnesses for the defense ("Expert or Fact Witness(es)") to have access to the sensitive materials. Specifically, the parties disagree as to: (1) the requirement that any Expert or Fact Witness proposed by the defense be pre-screened by GE to ensure that there are no conflicts; (2) the non-compete provision that would apply to any Expert or Fact Witnesses who are subsequently authorized to access any sensitive materials; and (3) the conditions on the transfer of sensitive materials between and among the defense team, including any Expert or Fact Witnesses.

The government respectfully submits that GE, as the corporate victim,[1] should be notified of the identity of any potential Expert or Fact Witness for whom the defense intends to provide sensitive materials, in advance of disclosure of such sensitive materials.[2] This will allow GE to determine whether the proposed Expert or Fact Witness has any conflict of interest that would threaten the secrecy of GE's sensitive materials. The government further submits that those defense Expert or Fact Witnesses who receive the sensitive materials should be subject to a limited

---

[1] Attached as Appendix A to this Memorandum of Law is GE's letter to the court requesting that, in addition to the positions argued by the government in this memorandum, that sensitive materials only be made available to the defense in government controlled spaces.

[2] *See* paragraphs 9(a)-(c) of the enclosure to Dkt. No. 34.

non-compete provision.[3] Finally, the government submits that sensitive materials should not be transmitted via e-mail or stored on a cloud-based server, even among defense counsel and their staff.[4]

## II.    ARGUMENT SUMMARY

The plain language of Title 18, United States Code, Section 1835 and its legislative intent support the government's positions regarding (i) the conditions under which the defense must notify GE of potential Expert or Fact Witness who requires access to the sensitive materials, and (ii) the requirement for the execution of limited non-compete provisions. Moreover, a prohibition on transmitting and storing sensitive materials via e-mail or cloud-based servers is a common sense prophylactic which will help ensure that GE's sensitive materials do not inadvertently end up being spilled onto the Internet.

To the extent that the defendant argues that a work product claim should prevail, there is case law within the Second Circuit suggesting that the mere identity of an expert or consultant— even those that do not testify—does not constitute protected work product. Moreover, such a privilege is not absolute and does not supersede the government's interest in requiring protective measures such as the advance disclosure of proposed expert consultants and witnesses and a non-compete provision.

In sum, the government seeks this order to protect not only GE's proprietary interests in its confidential information, but also the government's legitimate interest, as reflected in the governing statute, in assuring all similarly-situated victims that the confidentiality of their sensitive materials can be protected in a government investigation and prosecution.

---

[3] *See* paragraph 9(d) of the enclosure to Dkt. No. 34.
[4] *See* paragraph 6(a) of the enclosure to Dkt. No. 34.

3

### III.    LEGAL ANALYSIS

Due process requires that the government, upon request, disclose any evidence favorable to the accused that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). Additionally, Rule 16(a) of the Federal Rules of Criminal Procedure imposes a statutory duty upon the government to disclose, and provide the defendant access to, any documents that are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial. *See* Fed. Crim. P. 16(a). However, a defendant's right to discovery and his treatment thereof is neither absolute nor unbounded. On the contrary, a "court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *See* Fed. R. Crim. P. 16(d)(1); *see also United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) (taking note of the court's authority under the rule).

While the court must ensure that all material information is disclosed, it is well within its discretion to restrict discovery procedures such that the government's interest in protecting the integrity and security of confidential information, procedures, and witnesses is preserved. *See, e.g., United States v. Fernandez*, 913 F.2d 148, 157 (4th Cir. 1990) (noting that the Classified Information Procedures Act contemplates that the government present substitutions for relevant classified information provided that the substitutions offer the defendant substantially the same ability to make his defense as would disclosure of the specific classified information); *United States v. Koskerides*, 877 F.2d 1129, 1134 (2d Cir. 1989) (approving government's disclosure of redacted Special Agent Report, after *in camera* review determined that full report contained no relevant information).

Disclosure can be limited and Rule 16 protective orders properly issued when disclosure will cause considerable harm. *See, e.g., United States v. Aref*, 533 F.3d 72, 78-80 (2d Cir. 2008)

4

(holding request for classified information properly denied because contents of documents not helpful to the defense). The protection of unnecessary and unwarranted disclosure of confidential business information and trade secrets is both a legitimate government interest and a proper basis for the issuance of a protective order. *See United States v. RMI Co.*, 599 F.2d 1183, 1190 (3d Cir. 1979) (noting, in grand jury matter that, while necessary disclosure must occur under Rule 16, proper safeguards should be taken to preserve property rights in confidential business information).

The harm caused by disclosure of proprietary trade secret information to a potential competitor is both real and serious. It is critical that victims of trade secret theft have confidence that their trade secrets can be protected when they seek to pursue their rights in a court of law. The courts have acknowledged their responsibility in guarding against disclosure when a victim pursues a legal remedy. *See Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 540 n.11 (2d Cir. 1974) (unyielding preservation of public trial right in trade secrets cases will present trade secret owners "with the Hobson's choice of suffering an unprosecuted theft of their secrets, or allowing a prosecuted thief to broadcast the same secrets at trial"). The government seeks protective orders in these types of prosecutions specifically to avoid this danger.[5]

Accordingly, the United States Code explicitly directs courts to guard against this type of harm as follows: "the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see also United States v. Roberts*, No. 3:08-CR-175, 2010 WL 1010000, at *7-8 (E.D. Tenn. March 17, 2010) (entering a sealing order related to the presentation of certain purported trade secret materials at trial, pursuant to 18 U.S.C. § 1835). "This section does not, of course, abrogate existing

---

[5] The government cites to this concern only to underscore the general need to protect confidential information, not to suggest in any way that the defendant here is seeking such unfettered disclosure.

constitutional and statutory protections for criminal defendants. It does, however, represent a clear indication from Congress that trade secrets are to be protected to the fullest extent during [trade secrets] litigation." *United States v. Hsu*, 155 F.3d 189, 197 (3d Cir. 1998).

To that end, the legislative materials related to § 1835 demonstrate Congress' concern about the potential chilling effect that a lack of such protection would have upon victims, stating, "[t]he intent of this section is to preserve the confidential nature of the information and, hence, its value. Without such a provision, owners may be reluctant to cooperate in prosecutions for fear of further exposing their trade secrets to public view, thus further devaluing or even destroying their worth." *See* H.R. Rep. No. 104–788, at 13 (1996); S.R. 104-359, at 17 (1996). It is this specific concern that the government addresses here (allowing defense counsel to provide sensitive materials to whomever they wish, with no input from the corporate victim), which causes trepidation to the corporate victim, as defense counsel would lack the necessary industry context and background to evaluate whether that particular individual may have a conflict of interest in reviewing sensitive materials. [6] Furthermore, (i) removing the government's proposed non-compete provision, and (ii) allowing defense counsel to transfer sensitive materials via e-mail and / or cloud-based servers would create unnecessary opportunities for re-victimization and erode the corporate victim's faith in the government's ability to protect the sensitive materials.

A. Government's Proposed Expert Witness / Consultant Disclosure Requirement

A protective order that requires advance notification of potential receiving parties provides for the victim protection envisioned by Congress when crafting § 1835. Further, it does not hinder

---

[6] To the extent defense argues that the expert would have the background and expertise to recognize a conflict of interest, the government submits that the conflict of interest might not become clear until the expert has reviewed sensitive materials, at which point the damage is already done.

the defendant's ability to access and review the discovery materials provided by the government. To the extent that the defendant suggests that such disclosure automatically violates any work product privilege, the defendant is mistaken. First and foremost, at least one court within the Second Circuit has held that the disclosure of the *identity* of an expert alone does not constitute protected work product. *See Manzo v. Stanley Black & Decker Inc.*, No. CV 13-3963 (JFB)(SIL), 2015 WL 136011, at *2 (E.D.N.Y. 2015) ("[I]dentity information is discoverable without a showing of 'exceptional circumstances.'"); *Baki v. B.F. Diamond Const. Co.*, 71 F.R.D. 179, 182 (D. Md. 1976) (holding that "the names and addresses, and other identifying information, of experts, who have been retained or specially employed in anticipation of litigation or preparation for trial and who are not expected to be called as witnesses at trial, may be obtained through properly framed interrogatories without any special showing of exceptional circumstances in the absence of some indication that such information by reason of facts peculiar to the case at issue, is irrelevant, privileged, or for some other reason should not be disclosed").[7]

Furthermore, even assuming *arguendo* that somehow disclosing the identity of a potential expert would infringe upon this privilege, the work product privilege is not absolute. It is well-settled that certain work product materials "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings #5 Empaneled January 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) (quotation and citation omitted). In essence, the assertion of the

---

[7] Other circuit courts and at least one court in the Second Circuit have disagreed and found that disclosure of the identities of non-testifying experts can only be obtained under a showing of exceptional circumstances. *See, e.g., Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842 (8th Cir. 1988); *Ager v. Jane C. Stormont Hospital & Training, Etc.*, 622 F.2d 496, 503 (10th Cir. 1980); *Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 Civ. 1559 (RWS), 2015 WL 4597546 (S.D.N.Y. 2015).

work product privilege calls for a balancing test between competing interests. Here, the government respectfully submits that the need to protect the victim's confidential information, as directed by Congress, outweighs any purported work product privilege related to the mere identification of a potential expert. Specifically, the sensitive materials in this case include detailed product schematics and files related to GE's proprietary research which would enable a competitor to immediately manufacture GE's products, and unfairly provide insight into the focus and progress of GE's research and development projects. In addition to the substantial need for disclosure, short of receiving that information from the defendant, GE has no way of obtaining it. *See, e.g., Oregon Health & Science Univ. v. Vertex Pharmaceuticals, Inc.*, No. Civ. 01-1272-HU, 2002 WL 31968995, at *3 (D. Or. Oct. 24, 2002) (rejecting party's work product argument against disclosing identities of nontestifying experts and ordering, in trade secrets civil litigation, each party "to identify by name and city of residence each expert reviewing the other's confidential documents").

Accordingly, both the language of Section 1835 and the legislative intent guiding it warrant the protections sought in this matter. The substantial need to protect confidential materials outweighs any purported work product privilege shielding the identities of third parties who will be reviewing the materials at issue.

Based on a review of protective orders from other theft of trade secrets cases, the government's proposed language is neither unique nor overly burdensome. In fact, some protective orders go beyond the language proposed here. For example, in one theft of trade secrets case, despite the defendant's proposal to disclose expert witnesses to the court ex parte and *in camera*, the judge decided in favor of the government and required the disclosure of defense experts to both the corporate victim and the government. *See* Protective Order at 6-7, *United States v. Xiang*, No.

1:14-CR-160 (M.D.N.C. 2015), ECF No. 20 (requiring that the defense disclose identities of testifying and non-testifying experts to both the government and the corporate victim, and giving them 14 days to object). Protective orders from several other theft of trade secret cases include similar protections regarding disclosure of defense experts. *See* First Supplemental Protective Order at 2, *United States v. Xu*, No. 16-cr-10-KMK (S.D.N.Y. 2016), ECF No. 40 (stating that the defense must disclose the expert's resume or other written credentials to the government at least fourteen days before the proposed disclosure date); Protective Order at 3-4, *United States v. Pani*, No. 08-cr-40034-FDS, 2011 WL 4344336 (D. Mass. 2011), ECF No. 72 (stating that the defense must disclose testifying and non-testifying experts' identity and resume to the government and victim fourteen days before describing or providing discovery materials to the expert); Stipulated Protective Order at 7-8, *United States v. Sinovel Wind Grp. Co.*, No. 13-CR-84-BBC, 2014 WL 10920452 (W.D. Wis. 2014), ECF No. 107 (same); Stipulated Protective Order at 11, *United States v. Li*, No. 4:13-CR-00147 (S.D. Iowa May 19, 2015), ECF No. 359 (stating that the defense must disclose the identity and resume of its experts to the corporate victim and allowing five business days for any objection; restricting the corporate victim from disclosing or discussing such identities with the government or other third party until defense is required to disclose such identity to the government); Supplement to the Stipulated Protective Order at 2, *United States v. Zhang*, No. 13-20134-CM/JPO (D. Kan. 2018), ECF No. 92 (stating that the defense must disclose testifying and non-testifying experts' identity to the corporate victim, allowing the corporate victim fourteen days to notify the government and defense team of any objections, and requiring the government to file objections within seven days).

Furthermore, the United States Patent and Trademark Office ("USPTO") and several district courts, including the Northern District of New York, provide model protective orders (for

intellectual property cases) that include provisions like the one the government proposes here. *See e.g.*, Confidentiality Order at 5, United States District Court, Northern District of New York, https://www.nynd.uscourts.gov/forms/patent-protective-order ("At least fourteen days before the first disclosure . . . to an expert or consultant (or member of their staff), the party proposing to make the disclosure must serve the producer with a written identification of the expert or consultant and a copy of his or her curriculum vitae."); Protective Order at 4, United States District Court, Southern District of California, https://www.casd.uscourts.gov/_assets/pdf/forms/Model%20 Protective%20Order.pdf ("The party seeking approval of an independent expert must provide the producing party with the name and curriculum vitae of the proposed independent expert . . . in advance of providing any confidential information of the producing party to the expert. Any objection . . . must be made in writing within fourteen (14) days . . . ."); Standard Protective Order, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/appealing-trademark-decisions/standard-documents-and-guidelines-0 ("[A]ny party or attorney proposing to share disclosed information . . . shall provide notice of the name, address, occupation and professional background of the expert or independent consultant. The party or its attorney receiving the notice shall have ten (10) business days to object to disclosure . . . .").

Given the numerous instances in which protective orders have included expert disclosure provisions, the government submits that its proposed language is a necessary protection that is less restrictive than language used in similar cases (*i.e.,* allows disclosure to just GE with conditions that GE not inform or discuss with the government; pre-screening subject to a mere five-business-day objection period, etc.) and would not hamper or impinge on the defendant's rights and his ability to prepare his defense.

### B. Government's Proposed Non-Compete Provision

A non-compete provision as proposed by the government (*see* subparagraph 9(d) of the enclosure to Dkt. No. 34) provides protections similar to those imparted by the expert disclosure requirement and helps to address concerns contemplated by Congress and § 1835, namely, preserving the confidentiality of confidential information and trade secrets. The non-compete provision, however, provides necessary protections beyond the expert disclosure requirement; as such, both provisions should be included, rather than treated as mutually exclusive alternatives. For example, even after a defense expert is disclosed to GE and found to have no conflict of interest, the opportunity for a conflict may still arise if the expert decides later to work for one of GE's competitors. Without a non-compete provision, GE is left vulnerable to the very conflicts the expert disclosure requirement was meant to address.

The government recognizes that the agreed-upon terms in the protective order already require experts to acknowledge that sensitive materials will not be used for any purpose unrelated to this case. The non-compete provision provides a means of enforcing this acknowledgment and also prevents any indirect or unintended use of GE's information that may help a competitor and re-victimize GE. Although not proposed in the current protective order, some cases include patent prosecution bars that act as non-compete provisions specific to patent-related work. For example, a patent prosecution bar would prevent an expert who has reviewed sensitive materials from prosecuting patents related to the subject matter contained in those materials. In the theft of trade secrets case, *United States v. Pani*, the court contemplated whether a patent bar was required or whether a protective order prohibiting use of discovery information sufficed, ultimately deciding to require the prosecution bar. *See* Order on Pending Motions, *United States v. Pani*, No. 08-cr-40034-FDS (D. Mass. 2011), ECF No. 98 ("[T]he Court notes that patent bars are not uncommon

11

in cases involving valuable highly complex technical information."). The government argued that the prosecution bar provided additional protections (*i.e.,* preventing unintentional conflicts of interest and drawing a bright-line rule), and that even if the protections offered by a patent prosecution bar were already offered by the existing protective order language, adding the bar would not harm the defendant, and its inclusion could make the protective order clearer. *See* USA's Status Report, *Pani*, No. 08-cr-40034-FDS, ECF No. 70. Similarly, the government here submits that although the agreed-upon provisions currently provide some measure of protection, a non-compete provision would provide additional necessary protections as well as a bright-line rule to be applied in future disputes.

A number of cases have included a non-compete provision similar to the one proposed here in combination with an expert disclosure requirement. *See e.g.*, Stipulated Protective Order at 17-18, *United States v. Li*, No. 4:13-CR-00147 (S.D. Iowa May 19, 2015), ECF No. 359 (restricting for a two-year period any person who has received sensitive materials, preventing them from participating in any research and development or patent prosecution involving the related subject matter); Stipulated Protective Order at 8, *United States v. Sinovel Wind Grp. Co.*, No. 13-CR-84-BBC, 2014 WL 10920452 (W.D. Wis. 2014), ECF No. 107 (stating that the defense may not disclose sensitive materials to an expert who works for a competitor of the corporate victim, and that any expert shall not work for a competitor for two years following prosecution). The USPTO's model protective order similarly addresses restrictions on experts in intellectual property cases. *See* Standard Protective Order, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/appealing-trademark-decisions/standard-documents-and-guidelines-0 (limiting the people with whom sensitive materials may be shared by

excluding current or former employees of any party or any party's competitors from the definition of "independent experts or consultants").

The government's proposed non-compete provision requires a two-year restriction, is limited to competitors of GE Aviation and GE Power, and allows for modifications for good cause. Given the protections that a non-compete provision would provide, the proposed language is properly scoped and should be included in the protective order.

C. Transferring / Storing Sensitive Materials via E-mail and Cloud-Based Servers

Defense counsel proposes that they be allowed to "transmit [sensitive] materials via encrypted e-mail between one another to facilitate or maintain the material on a secure cloud-based [server] with access limited to attorneys and the attorney's staff." *See* defense proposed paragraph 6(a) of the enclosure to Dkt. No. 34. The government objects to this modification and submits that allowing transfer of sensitive materials by e-mail and / or storage of sensitive materials in the cloud, even among defense counsel and their staff, is contrary to the government's interest in preventing unwarranted disclosure because it creates opportunities for sensitive materials to be mishandled. Even if sensitive materials are encrypted before being e-mailed, the sensitive materials would still be available to any attorney or staff member with access to those e-mails on cell phones, laptops, and any other electronic devices with e-mail capabilities. The e-mails would also reside on servers potentially outside the control of defense counsel. Since defense counsel are located in three different offices, the number of people with access to the e-mails is higher, and with each person, the number of devices that can access the e-mails also increases. Additionally, due to widespread use of mobile electronics such as cell phones and laptops, transferring sensitive materials by e-mail would likely conflict with the already agreed-upon provision that sensitive materials are to remain at the secure offices.

13

The potential risks far outweigh the defense's interest in convenience—particularly at this stage of the proceeding. Even without e-mail transfers, the protective order allows defense counsel to transfer sensitive materials by external electronic media devices, such as DVDs or USB drives. These permissible methods do not hamper the defendant's ability to prepare for trial, and when compared to transfer via e-mail, significantly reduce the potential for unwarranted disclosure. As such, the modification proposed by defense counsel should not be included in the protective order.

IV. CONCLUSION

For all of the reasons set forth above, the government respectfully requests that the Court rule (i) that the language contained within paragraphs 9(a)-(d) of the enclosure to Dkt. No. 34 be included in any protective order; and (ii) that the government's proposed language in paragraph 6(a) to the enclosure to Dkt. No. 34 govern, vice the defense's proposed paragraph 6(a), so that sensitive materials discovery may be produced in the above captioned matter.

This the 24th day of May, 2019.

Respectfully submitted,

GRANT C. JAQUITH
UNITED STATES ATTORNEY

By: /S/ Richard D. Belliss

Richard D. Belliss
Assistant United States Attorney
Bar Roll No.: 515295
United States Attorney's Office
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Telephone: (518) 431-0247

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL

By: */S/ Jason McCullough*
    Jason B.A. McCullough
    Trial Attorney
    DCBN 998006
    NYBN 4544953
    U.S. Department of Justice
    National Security Division
    950 Pennsylvania Avenue, NW
    Washington, D.C. 20530
    Telephone: 202-233-0986

By: */S/ Matthew Chang*
    Matthew Y. Chang
    Trial Attorney
    ILBN 6326700
    U.S. Department of Justice
    National Security Division
    950 Pennsylvania Avenue, NW
    Washington, D.C. 20530
    Telephone: 202-233-0986

CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2019, the foregoing was electronically filed with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the following:

Kevin Luibrand, Esq.

Brad Henry, Esq.

Matthew Olinzock, Esq.

<div style="margin-left: 40%;">

Respectfully submitted,

GRANT C. JAQUITH
UNITED STATES ATTORNEY

*/S/ Richard D. Belliss*
Richard D. Belliss
Assistant United States Attorney
Bar Roll No.: 515295
United States Attorney's Office
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Telephone: (518) 431-0247

</div>

# Appendix A



**Felipe Paez**
Chief Counsel, Information Protection & Cyber
1 Research Cir.
Niskayuna, NY 12309

**VIA EMAIL**

May 20, 2019

To: Honorable Court in the matter of <u>United States v. Ziaoqing Zheng</u>

Via: Rick Belliss, Assistant United States Attorney

Subject: GE's concerns regarding discovery process re-injury

On behalf of the General Electric Corporation ("GE"), I submit the following for the Court's consideration in the above-captioned case:

GE as a victim in this case has been notified that the Court is considering the parameters of a protective order designed to protect GE's proprietary information during all trial phases for this matter. GE greatly appreciates the Court's efforts to this end and wishes to provide relevant information for the Court's consideration.

GE is still in the process of fully understanding the effects of the theft of its proprietary information at the hands of Mr. Zheng and others. As the trial proceeds, GE is very concerned about the prospect of additional injury resulting from dissemination (intentional or unintentional) of GE trade secrets and other proprietary information beyond a tightly controlled group. GE's concerns go well beyond those normally inherent to cases involving theft of trade secrets given; the defendant's potential ties to state-sponsored economic espionage, and the nefarious and advanced methodologies he used to steal the information.

The trade secrets involved in this case are present in electronic files containing computer models, material specifications, design drawings, assembly drawings, and vendor information. Some of these files contain such extensive engineering information that they are tantamount to recipe manuals for manufacturing and/or servicing of the related GE Power technology. As such, GE is very interested in ensuring that effective controls are prescribed by the Court to prevent further cyber-threats and/or inappropriate dissemination or misappropriation of the material.

GE requests that the Court order the government to retain control of said files containing trade secrets and make the same available for defense team review in appropriately designated and secure spaces. GE is willing to provide a computer to both defense counsel and the government that has GE controls built into them that will prevent copying or transmission of the files. If the

Court directs it, this computer can also be provisioned to contain the software necessary to view the technical files in question. If the Court denies this request, then GE requests that a similar computer be used by the defense team for review of the related materials in their controlled spaces only. Here, GE humbly requests from the Court the right to audit the computer used by the defense team to confirm that an unauthorized transmission of said files did not occur. In either scenario we request that the computer should be safeguarded and not be connected to the internet.

As it relates to defense consultants, GE requests that it be notified of the identity of such third parties and given an opportunity to object before they are granted access to view related materials in either government offices or the defense offices as the Court directs.

In closing, GE requests that any discovery methodology chosen by the Court does not result in files being transferred into the possession of 3rd parties to include defense consultants due to the inherent risk of loss by GE once the government and/or defense teams lose direct control of the same. It is GE's understanding that this approach was proposed by the government to the defense with no agreement reached to date.

Respectfully Submitted,

Felipe Paez