**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

    **vs.**                       **1:19-CR-156**
                                   **1:20-MC-57**
                                   **(MAD)**

**XIAOQING ZHENG and ZHAOXI ZHANG,**

                    **Defendants.**

_____

*IN RE*: **GENERAL ELECTRIC,**

                    **Non-Party Intervenor,**


_____

**APPEARANCES:**                         **OF COUNSEL:**

**OFFICE OF THE UNITED**        **RICHARD D. BELLISS, AUSA**
**STATES ATTORNEY**              **EMILY C. POWERS, AUSA**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207-2924
Attorneys for the Government

**LUIBRAND LAW FIRM, PLLC**     **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorneys for Defendant Zheng

**MICHELMAN & ROBINSON, LLP**   **BRADLEY L. HENRY, ESQ.**
800 3rd Avenue, 24th Floor
New York, New York 10022
Attorneys for Defendant Zheng

**CLIFFORD CHANCE US LLP**      **CELESTE L. KOELEVELD, ESQ.**
31 West 52 Street                  **MINJI REEM, ESQ.**
New York, New York 10019
Attorneys for General Electric

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Defendant Xiaoping Zheng ("Defendant") was hired by General Electric ("GE") in 2008 and worked at GE as a full-time engineer until on or about August 1, 2018, the date of his arrest. On April 18, 2019, Defendant was charged along with Zhaoxi Zhang in Indictment No. 1:19-cr-156 with theft of GE's trade secrets and economic espionage. *See* Dkt. No. 25. According to the fourteen-count Indictment, Defendant, while employed at GE Power & Water in Schenectady, New York, exploited his access to GE's files by stealing proprietary technology relating to various components and testing systems associated with GE gas and steam turbines. *See id.* The Indictment further alleges that Defendant, in violation of GE policy and terms of employment, transferred the stolen GE files in encrypted emails to his business partner in China (Zhang) to benefit to benefit their two Chinese companies – Liaoning Tianyi Aviation Technology Co., Ltd. ("LTAT") and Nanjing Tianyi Avi Tech Co., Ltd. ("NTAT") – in researching, developing, and manufacturing parts for turbines. According to the Indictment, LTAT and NTAT are owned, controlled, sponsored, commanded, managed, and dominated by the Chinese government. *See id.* The Indictment further alleges that Defendant and Zhang conspired to commit economic espionage, as the thefts of GE's trade secrets were carried out knowing and intending that the thefts would benefit China and one or more of its foreign instrumentalities (including LTAT and NTAT). *See id.*

Currently before the Court is GE's motion to quash Defendant's Rule 17(c) third-party subpoena.

## II. DISCUSSION

### A.    Subpoena at Issue and GE's Motion

In the subpoena at issue, Defendant makes twenty-five requests (broken up into four broad categories) seeking documents and information relating to a twelve year time period from January 1, 2008 to the present.  *See* Dkt. No. 76-1 at 5-7.  The Court will address each request in turn.

Specifically, the categories and twenty-five requests are set forth below:

Documents related to the identification of trade secrets.

1.    All GE documents including the alleged trade secrets at issue in the indictment.

2.    All technical reports on the development of the carbon seal design identified in the Indictment, specifically including but not limited to the Microsoft Word document believed to be stored in the file system path "d:\users\204050598\documents\NTI\2018\carbon\design tool".

3.    All documents and CAD models on GE's Schenectady Warehouse server or any other computer accessible by Dr. Zheng during his employment at GE that are related to gas turbine combustors and fuel nozzles, specifically including documents sufficient to understand their structures to determine whether the fix outlined in the Root Cause Analysis related to the combustor fuel nozzle leak in a Pakistan gas turbine would need a backup plan.

Documents Related to GE's protection of the trade secrets.

4.    All documents related to any prior disclosure outside GE of the alleged trade secrets at issue, by GE or otherwise, including disclosures pursuant to non-disclosure or other similar agreements.

5.    All non-disclosure agreements with GE vendors manufacturing seals for GE Power and GE Aviation.

6.    All GE patents in the U.S. and/or China on GE products in the areas that Dr. Zheng worked.

3

7. All files downloaded and/or accessed by Dr. Murat Ozmusul from the LTAT computer system, including any alleged GE files.

8. Qualification documents from the "NTI Project" related to "advanced brush seal" U8668 versus U8227.

9. All documents and records indicating which of the 200 MatLab files allegedly downloaded by Dr. Zheng were hosted on GE system or server requiring special privileges to perform a download.

<u>Documents related to GE's valuation of trade secrets</u>.

10. All documents related to General Electric Company's ("GE") calculation of the value of the alleged trade secrets at issue in the Indictment, including, but not limited to underlying notes, calculations, communications, budgets and audits.

<u>Documents related to Dr. Zheng's misappropriation of trade secrets</u>.

*GE's need for additional material providers*

11. Documents related to GE Power's and GE Aviation's operations in China detailing the number of facilities, number of employees, technologies created or serviced from those facilities and the dates each facility was opened.

12. All internal and external documents and communications related to GE Power or GE Aviation's seal suppliers shutting down operations and/or moving operations to Florida from Massachusetts.

13. An accounting of all GE Power and GE Aviation's equipment and service sales to the Chinese government, Chinese entities and Chinese persons in the last five years.

14. The identification by company name and location of any brush seal vendors used by GE that are currently using a wrapping drum to make brush seals for GE steam turbine, gas turbine and/or aviation.

15. The presentation entitled "Update on Kazan Fuel Nozzle Fracture and Liberation RCA" by Rachel Hutchinson, presented on 10/18/2017 to the weekly "CEO Forum" meeting.

*GE's knowledge and approval of Dr. Zheng's activities*

16.     All internal documents and communications regarding GE's analysis and decision on Dr. Zheng's interest in working on projects outside GE.

17.     GE standards for awards to employees.

18.     All materials submitted to the Department of Energy related to any project that Dr. Zheng was the principal investigator, including the submitted proposal, reward letter, signed contract and budget plan.

19.     All emails between GE and Dr. Zheng requesting that he assist GE China in finding a new brush seal supplier in China.

20.     All emails exchanged between Dr. Zheng and GE's IT Department regarding software license usage in connection with MatLab, specifically including but not limited to exchanges regarding the permissible time period for such license usage in 2018.

*Whether Dr. Zheng appropriated the trade secrets*

21.     All documents related to GE's monitoring of Dr. Zheng's activities on his GE workstation from November 1, 2017 to July 6, 2018.

22.     All GE documents and communications related to Dr. Zheng's activities related to the alleged theft of trade secrets.

23.     All GE policies on working on outside projects.

24.     All electronic communication between Dr. Zheng and any alleged co-conspirator.

25.     Identification of any monitoring software installed on Dr. Zheng's iPhone X (produced as 1B8).

Dkt. No. 76-1 at 5-7.

Throughout the course of the Government's investigation, and in connection with discovery, GE has already produced a significant volume of documents and other materials to the Government and Defendant. For example, GE has provided the Government with the following: (1) a copy of the hard drive of Defendant's GE computer, which GE contends contains the documents identified in the Indictment as the trade secrets Defendant allegedly stole from GE; (2)

documents and videos reflecting Defendant's alleged misappropriation of trade secrets at issue in the Indictment; (3) a list of Defendant's patents; (4) GE's draft damages assessments; (5) Defendant's conflict of interest disclosures referenced in the Indictment; (6) GE's policies on the use of GE's intellectual property, information resources, and working on outside projects; (7) Defendant's training and acknowledgment records; and (8) screenshots of the consent banners and security warnings GE employees see when they log onto their computers. *See* Dkt. No. 1-1 at 6.

Additionally, prior to the subpoena at issue, on January 31, 2020, Defendant sent a letter requesting discovery from the Government and GE, which listed most of the information contained in the subpoena. *See* Dkt. No. 71-4 at 1-8. On March 31, 2020, in response to Defendant's requested discovery, GE submitted a comprehensive response, providing additional information, explaining how information either did not exist or was not available for production, and suggesting that Defendant's counsel specify, clarify, or narrow other requests, as appropriate. *See* Dkt. No. 71-7 at 1-7.

According to GE, rather than "specifying, clarifying or narrowing his vague and overbroad discovery requests, Defendant merely repeated them in the Rule 17(c) Subpoena, with little justification beyond conclusory statements that the materials sought are evidentiary and relevant." Dkt. No. 1-1 at 6. GE argues that Defendant's requests "read like civil discovery requests" and notes that in "18 of the 25 requests, Defendant seeks 'any and all' documents or communications relating to various topics – most of which bear no apparent relevance to the charges in the Indictment." *Id.* at 7. Further, GE contends that many of the requests seek documents that Defendant has already received from the Government. *See id.* GE continues that, "while Defendant divides his requests into categories and sub-categories, Defendant nowhere explains how the actual requests seek relevant, admissible evidence connected to those category titles." *Id.*

As such, with the exception of a handful of the requests, GE contends that the subpoena should be quashed.

**B.      Standard**

Rule 17(c) of the Federal Rules of Criminal Procedure provides as follows:

> (1) In General.  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

> (2) Quashing or Modifying the Subpoena.  On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed. R. Crim. P. 17(c).

Rule 17(c) subpoenas "are held to a strict standard" developed by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974).  Under this standard, the moving party must establish that "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  *Nixon*, 418 U.S. at 699-700.  When a party moves to quash a subpoena as "unduly 'unreasonable or oppressive,' ... the party seeking compliance must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence."  *United States v. Barnes*, 560 Fed. Appx. 36, 39-40 (2d Cir. 2014) (citing *Nixon*, 418 U.S. at 699-700).

**C.     Application**[1]

Although the Court will address each of twenty-five requests in the Subpoena in turn, the

Court begins by making three general observations.  First, the Subpoena seeks information that is

otherwise obtainable through the exercise of due diligence, including various categories of

information that GE has already produced to the Government and information that is publically

available.  *See*, *e.g.*, Dkt. No. 76-1 at Requests 1 & 6.  Second, for many of the categories of

information sought, Defendant has failed to offer any cogent explanation as to how the

information sought would be admissible at trial, let alone how such information is even relevant

to the crimes charged in the Indictment.  *See United States v. Mendinueta-Ibarro*, No. 12-cr-379,

2013 WL 3871392, *2 (S.D.N.Y. July 18, 2013) ("Subpoenas seeking 'any and all' materials,

without mention of 'specific admissible evidence,' justify the inference that the defense is

engaging in the type of 'fishing expedition' prohibited by *Nixon*") (citations omitted).  Third, the

Subpoena does not seek specific, identifiable pieces of evidence as required by Rule 17, and

---

[1] In his response to the motion to quash, Defendant contends that GE's motion should be denied because "the Court has already determined that all of Dr. Zheng's requests are relevant, admissible, and specific[.]"  Dkt. No. 13 at 5.  According to Defendant, in granting Defendant's motion and issuing the Subpoena, the Court necessarily determined that Defendant had met his burden under Rule 17(c).  *See id.* at 5-6.  Further, Defendant claims that, by filing its motion to quash, GE is "now unnecessarily prolonging this issue."  *Id.*  Contrary to Defendant's position, GE is not unnecessarily prolonging this issue by moving to quash, which it clearly has the right to do.  Further, when the Court issued the Subpoena, no findings were made on the record.  Rather, when the Government indicated that it did not oppose issuing the subpoena, the Court issued the Subpoena and terminated the motion as moot.  Rather, Rule 17(c)(2) clearly indicates that, once a motion to quash is made, the Court may quash or modify the subpoena "if compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).  Under Defendant's logic, the section of Rule 17 providing for a motion to quash would be meaningless.

instead sets forth exceedingly broad, open-ended categories of information that covers a twelve-year time frame.[2]

### 1. Requests related to the identification of trade secrets (Nos. 1-3)

#### a. Request No. 1

In his first request, Defendant seeks "[a]ll GE documents including the alleged trade secrets at issue in the indictment." GE claims that it has already provided the Government all materials responsive to this request and that these materials have been produced to Defendant. *See* Dkt. No. 1-1 at 11. Further, GE argues that the overbreadth of this request, and all similar requests, is evident on the face of the request, given the definition of the word "All" as used in the Subpoena. *See id.* at 10.[3] In response, Defendant contends that GE misconstrues this request, and that it is not overbroad. *See* Dkt. No. 13 at 8. Defendant further sets forth the definition of a trade secret and discusses the proposed testimony of the Government's "Seal Expert." *Id.* at 8-9.

Notably absent from Defendant's response is an explanation to GE's assertion that this information is already in his possession and otherwise obtainable through the exercise of due diligence. To the contrary, Defendant makes no attempt to distinguish between the materials that the Government has already produced to Defendant and those that Defendant seeks through the Subpoena. Where, as here, there is "overlap between the reach of the Subpoena[ ] and the

---

[2] Schedule A, Instruction C of the Subpoena provides as follows: "Time Period: Unless otherwise stated in the 'Documents to be Produced' section, this subpoena refers to the time frame from January 1, 2008, through the date of subpoena compliance and calls for the production of all responsive documents dated, composed, revised, or referred to at any time during that time frame. Documents created prior to January 1, 2008, that have been used or relied on by you since January 1, 2008, or that describe any duties, obligations, or policies that were in effect after January 1, 2008, are within the time frame of this request." Dkt. No. 76-1 at 4.

[3] As set forth in the "Definitions" section of the Subpoena, the term "'[a]ll' shall be construed to include 'any,' and 'any shall be construed to include 'all.' Both terms also include 'each and every.'" Dkt. No. 76-1 at 3.

government's production during discovery," and the proponent fails to "successfully distinguish[ ] the materials that the government already produced from the materials to which [the proponent] claims entitlement by subpoena," it must be quashed. *United States v. Bergstein*, No. 16-cr-746, 2017 WL 6887596, *5 (S.D.N.Y. Dec. 28, 2017). "*Nixon*'s specificity requirement does not permit a defendant to force a non-party by subpoena to replicate all or part of the government's discovery productions in the hope that the non-party's production will produce something more." *Id.*

Moreover, Defendant's assertion that this request is "tied to a specific item of evidence" is nonsensical. On its face, the request broadly seeks "[a] GE documents" pertaining to the trade secrets at issue in the Indictment which, under the Subpoena's broad definition of "documents," encompasses a vast universe of materials. Moreover, as reflected in the part of the expert disclosure quoted in Defendant's opposition, "[t]he files to be opined on by said Seal expert" are attachments to emails specifically identified in the Indictment as "the alleged e-mail thefts" – the emails and attachments that the Government has already provided to Defendant. *See* Dkt. No. 71-5 at 1-3.

Accordingly, the Court grants GE's motion to quash as to Request No. 1.

### b. Request No. 2

In his second request, Defendant seek "[a]ll technical reports on the development of the carbon seal design identified in the Indictment, specifically including but not limited to the Microsoft Word document believed to be stored in the file system path 'd:\users\204050598\documents\NTI\2018\carbon\design tool'." In its motion, GE contends that "[a]ny documents stored in the above-referenced file path, to the extent they exist, would most likely – and most conveniently – be found on the hard drive of Dr. Zheng's GE computer. GE has

already provided the hard drive to the Government, and GE understands that the Government has made a copy available to Defendant." Dkt. No. 1-1 at 12. Further, GE argues that the request for "[a]ll technical reports on the development of the carbon seal design identified in the Indictment" should be quashed because it does not satisfy the specificity requirement. *See id.* In response, Defendant contends that "GE in stating that the technical reports 'most likely' are on the hard drive imply that there is still a possibility that they may be found elsewhere. This information being 'most likely' on a hard drive is not within the ballpark of an acceptable response and Dr. Zheng seeks this targeted information." Dkt. No. 13 at 10. Defendant further argues that this request is sufficiently specific. *See id.*

Again, Defendant's request is not sufficiently specific and he fails to remove from the request materials that the Government has already produced and are in his possession. Further, in response to GE's assertion that the requested materials are most likely on the copy of Defendant's hard drive – which GE provided to the Government, and which Defendant received from the Government – Defendant offers nothing but sheer speculation about the "possibility" that the requested information "may be found elsewhere." Defendant's refusal to acknowledge whether the requested information is already in the hard drive is telling: either he has not reviewed the hard drive (and, therefore, is unable to establish that the requested materials cannot be obtained by exercising due diligence) or Defendant seeks to engage in a fishing expedition in hopes of finding unspecified materials beyond those already on the hard drive.

Additionally, Defendant implies that GE has somehow failed to meet its evidentiary burden by "not provid[ing] any evidence to support its claims that the requests are unreasonable or oppressive." Dkt. No. 13 at 25. However, as the Supreme Court found in *Nixon*, and as the district courts in the Second Circuit have made clear, the "party responding to a motion to quash

11

must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Pena*, No. 15-cr-551, 2016 WL 8735699, *2 (S.D.N.Y. Feb. 12, 2016) (citations omitted).

Accordingly, the Court grants GE's motion to quash as to Request No. 2.

### c. Request No. 3

In his third request, Defendant seeks "[a]ll documents and CAD models on GE's Schenectady Warehouse server or any other computer accessible by Dr. Zheng during his employment at GE that are related to gas turbine combustors and fuel nozzles, specifically including documents sufficient to understand their structures to determine whether the fix outlined in the Root Cause Analysis related to the combustor fuel nozzle leak in a Pakistan gas turbine would need a backup plan." GE contends that this request fails the specificity and relevance tests insofar as it seeks "[a]ll documents and CAD models" related to "gas turbine combustors and fuel nozzles," that bear no apparent connection to the specific allegations against Defendant. Dkt. No. 1-1 at 13. GE continues that "it is unclear how a 'Root Cause Analysis related to the combustor fuel nozzle leak' in an unspecified 'Pakistan gas turbine' has any bearing on the trade secret thefts outlined in the Indictment." *Id.* In response, Defendant contends that this request "is directly in response to paragraph 79 in the Indictment which alleges that Dr. Zheng obtained information on fuel nozzles and that his actions were his attempt to take GE trade secrets." Dkt. No. 13 at 10. Defendant alleges, by way of background, that he had been invited by GE to presentations for his insight on a nozzle issue with regard to a foreign-purchased GE turbine that had significant nozzle issues and that his input was invited by GE. *See id.* Further, Defendant contends that this request is sufficiently specific because "its use of the phrase 'All documents' is directly linked to a highly

specific category of evidence, i.e. CAD models on GE's Schenectady Warehouse server or any other computer accessible by Dr. Zheng during his employment at GE that are related to gas turbine combustors and fuel nozzles." *Id.* at 11.

First, nothing about paragraph 79 of the Indictment demonstrates that this evidence would be relevant to any potential defense. Paragraph 79 specifically relates to an email Defendant sent on October 23, 2017 from his GE email account to his personal Hotmail account, which allegedly contained a file with encrypted "design schematics for a proprietary GE gas turbine combustion system, including the fuel nozzles, which design schematics are GE trade secrets within Trade Secret Category 4." Dkt. No. 25 at ¶ 79. This request in no way relates to the trade secrets Defendant is alleged to have delivered to his business partner and co-Defendant in China.

Second, as GE correctly notes, Defendant's attempt to frame Request No. 3's request for "[a]ll documents" as "directly linked to a highly specific category of evidence," *i.e.*, CAD models, is belied by the language of the request. Request No. 3 plainly seeks "[a]ll documents and CAD models on GE's Schenectady Warehouse server or any other computer accessible to Dr. Zheng during his employment at GE[.]" On its face, this is far from a request for a "highly specific category of evidence."

Accordingly, the Court grants GE's motion to quash as to Request No. 3.

### 2. Requests related to GE's protection of the trade secrets (Nos. 4-9)

#### a. Request Nos. 4 & 5

In his fourth request, Defendant seeks "[a]ll documents related to any prior disclosure outside GE of the alleged trade secrets at issue, by GE or otherwise, including disclosures pursuant to non-disclosure or other similar agreements." In the fifth request, Defendant seeks "[a]ll non-disclosure agreements with GE vendors manufacturing seals for GE Power and GE

Aviation." In its motion, GE contends that these requests are insufficiently specific, irrelevant, and/or otherwise procurable through a reasonable exercise of diligence. *See* Dkt. No. 1-1 at 14. Further, GE asserts that it is unaware of any disclosure outside of GE in the absence of a non-disclosure or other similar agreement. *See id.* Moreover, GE contends that it has identified four non-disclosure agreements entered into with third-party vendors of gas turbine parts involving the seal technology at issue in the Indictment and that it is providing Defendant with those non-disclosure agreements. *See id.* To the extent that the requests seek non-disclosure agreements beyond the four that have been identified, GE argues that the requests fail to satisfy the specificity requirement and that the request for "[a]ll non-disclosure agreements with GE vendors manufacturing seals for GE Power and GE Aviation," regardless of whether the trade secrets at issue in the Indictment were disclosed to all such vendors, seeks irrelevant information and is unduly oppressive and burdensome. *See id.* In response, Defendant contends that these requests go to the core of his defense because, if the alleged trade secrets in the Indictment were known in the industry or subject to publicly filed patents, then they would not be considered trade secrets. *See* Dkt. No. 13 at 12.

As GE notes in its reply, Defendant fails to offer any explanation as to how the terms of GE's non-disclosure agreements with its vendors are relevant to his defense, much less offer any reason why he needs an unspecified universe of non-disclosure agreements beyond the four that GE has already produced. Additionally, the Court agrees that Defendant's request for all non-disclosure agreements with seal vendors for both GE Power and GE Aviation is unduly oppressive and unreasonable, especially in light of the fact that GE has represented that all vendors were required to sign non-disclosure agreements and has provided four samples of those agreements. It

is unclear how providing an unspecified additional amount of these agreements would lead to relevant, admissible evidence.

Accordingly, the Court grants GE's motion to quash as to Request Nos. 4 & 5.

### b. Request No. 6

In his sixth request, Defendant seeks "[a]ll GE patents in the U.S. and/or China on GE products in the areas that Dr. Zheng worked." GE contends that its patents in the United States and China are publicly available and may easily be obtained by Defendant through a basic online search. *See* Dkt. No. 1-1 at 15. Therefore, GE argues that Defendant fails to establish that these documents are not otherwise procurable through reasonable diligence. *See id.* Moreover, GE contends that the request is unduly burdensome and fails the specificity requirement in that the request seeks "[a]ll GE patents in the U.S. and/or China on GE products in the areas that Dr. Zheng worked" over the course of his ten-year employment period at GE. *See id.* In response, Defendant argues that this request only seeks his patent work at GE, "which would reveal that much of the work that Dr. Zheng is accused of doing was consistent with developing patents for GE at other periods throughout his time working for GE." Dkt. No. 13 at 13. Defendant continues that "[o]nly GE records reveal exactly which patented projects Dr. Zheng worked on. The patents themselves – which make a matter public and no longer a trade secret – do not necessarily reveal Dr. Zheng's role." *Id.* In its reply, GE argues that the request imposes an unreasonable and oppressive burden on GE because GE does not maintain records of patents that each employee has worked on. *See* Dkt. No. 17 at 10.

The Court agrees with GE that this request is unduly oppressive and burdensome since GE does not maintain records of patents that its employees have worked on. Defendant is in a better

position to assess the patents that he worked on during his employment with GE. Accordingly, the Court grants GE's motion to quash as to this request.

### c. Request No. 7

In his seventh request, Defendant seeks "[a]ll files downloaded and/or accessed by Dr. Murat Ozmusul from the LTAT computer system, including any alleged GE files." GE contends that this request fails to satisfy the specificity requirement and that Defendant fails to establish how this request is relevant to GE's protection of its trade secrets, much less the trade secrets at issue in the Indictment. *See* Dkt. No. 1-1 at 15. GE further asserts that it has been informed and believes that this information is available from the Government. *See id.* Defendant responds that this information is relevant because Dr. Ozmusul has been identified by the Government as a material witness and that had independent access, as a GE employee, to GE internal documents and was in a position to remove documents and assign responsibility to Defendant. *See* Dkt. No. 13 at 14.

Again, this request is exceedingly broad. Defendant's request does not attempt to limit the documents he seeks to those relevant to the trade secrets/documents identified in the Indictment. Rather, it seeks "[a]ll files download and/or accessed by Dr. Murat Ozmusul," without limiting his request to only those documents or downloads that would be potentially relevant to any defense. Therefore, the Court grants GE's motion to quash Request No. 7.

### d. Request No. 8

In his eighth request, Defendant seeks "[q]ualification documents from the 'NTI Project' related to 'advanced brush seal' U8668 versus U8227." GE contends that "Defendant fails to establish how this information is relevant to GE's protection of its trade secrets, much less the trade secrets at issue in this case." Dkt. No. 1-1 at 15. In response, Defendant contends that the

Indictment alleges an August 22 transfer by email by Defendant of specific documents. *See* Dkt. No. 13 at 14. Defendant continues that the target document in the subpoena which is sought – qualification documents for the NTI project related to advanced brush seal U8668 versus U8227 – will show that the transferred document was not a GE-created trade secret, but a patented vendor drawing that GE duplicated and used in its own manufacturing process. *See id.* Defendant further alleges that GE had also patented that process, which means that both the underlying U8227 qualification document and designs which originated from the vendor, are public documents, as patented, and that the U8668 manufacturing process is patented by GE. *See id.* Therefore, Defendant contends that the document will refute the allegation contained in the Indictment that these were GE trade secrets. *See id.*

Defendant has still failed to explain how "[q]ualification documents" from the NTI Project related to "advanced brush seal" U8668 versus U8227 are relevant to the August 22 trade secret transfer alleged in the Indictment. According to the Indictment, that transfer included a five-page design schematic for the manufacture of metal brush seal for steam turbines. *See* Dkt. No. 25 at ¶¶ 71-72. This five-page design schematic was allegedly hidden along with several other documents in a file called "overview-zip.zip" and delivered to Defendant's co-defendant in China. Whether this particular schematic was a trade secret, as alleged in the Indictment, or "a patented vendor drawing that GE duplicated and used in its own manufacturing process," as Defendant claims, turns on the contents of the five-page document and the allegedly patented technology (which would be publicly available). Therefore, the "[q]ualification documents" are not relevant to that question.

Accordingly, the Court grants GE's motion to quash as to Request No. 8.

### e. Request No. 9

In his ninth request, Defendant seeks "[a]ll documents and records indicating which of the 200 MatLab files allegedly downloaded by Dr. Zheng were hosted on GE system or server requiring special privileges to perform a download." GE contends that this request also fails the specificity requirement and that Defendant fails to establish how this information is relevant to GE's protection of its trade secrets. *See* Dkt. No. 1-1 at 16. Further, GE asserts that there is no readily available method by which it could determine which of the 200 MatLab files "were hosted on [a] GE system or server requiring special privileges to perform a download." *Id.* Therefore, GE contends that this request would "impose an unduly oppressive and unreasonable burden on GE, requiring it to investigate each of the 200 MatLab files on a record-by-record basis, through multi-tiered reviews and interviews across various departments." *Id.* In response, Defendant argues that this request seeks information related to how GE protects its trade secrets and that the Government bears the burden of showing that GE considered materials trade secrets and took adequate measures to protect those materials. *See* Dkt. No. 13 at 14.

The Court agrees with GE that this request, which again seeks "all" documents and records, fails the specificity requirement. Further, GE has sufficiently set forth that it does not have such documents and that creating them would require an extensive investigation that would impose an unreasonable burden on GE. As such, the Court grants GE's motion to quash as to Request No. 9.

### 3. Requests related to GE's valuation of the trade secrets (No. 10)

#### a. Request No. 10

In his tenth request, Defendant seeks "[a]ll documents related to General Electric Company's ("GE") calculation of the value of the alleged trade secrets at issue in the Indictment, including, but not limited to underlying notes, calculations, communications, budgets and audits."

In response, GE contends that it does not have documents created at the time of Defendant's alleged theft of trade secrets that reflect the value of those secrets. *See* Dkt. No. 1-1 at 16. Moreover, GE asserts that "[t]o the extent that draft damages assessments provided to the Government after Dr. Zheng's arrest and prosecution include estimates of the value of the trade secrets at issue, the Government is in possession of those documents and has already provided them to the defense." *Id.* Finally, GE contends that any additional draft damages assessments that are among GE's internal files were prepared by in-house counsel and are therefore protected by attorney-client and work-product privileges. *See id.* In response, Defendant points out that the Government has identified a GE-employed expert who is expected to testify at trial regarding, among other things, the value of the trade secrets at issue to a GE competitor. *See* Dkt. No. 13 at 15-16. According to Defendant, "[t]he government therefore has identified a GE employee who has and will present sufficient information on the trade secrets for the GE witnesses to identify and detail the economic value of the trade secrets, [and] GE is now unwilling to provide those materials." *Id.* at 16-17. In its reply, GE reiterates that it has no additional documents to produce in response to this request. *See* Dkt. No. 17 at 11.

Pursuant Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the Government was required to provide a written summary of its expert witnesses' testimony, which describes the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. The Government has complied with its discovery obligation for its expert witnesses. In his tenth request, Defendant has failed to specify any additional evidence he is entitled to. Moreover, GE has asserted that no such additional evidence exists that is not otherwise subject to attorney-client or work-product privilege. Accordingly, the Court grants GE's motion to quash as to Request No. 10.

### *4. Requests related to Dr. Zheng's misappropriation of the trade secrets (Nos. 11-25)*

#### *a. Request No. 11*

In his eleventh request, Defendant seeks "[d]ocuments related to GE Power's and GE Aviation's operations in China detailing the number of facilities, number of employees, technologies created or serviced from those facilities and the dates each facility was opened." GE contends that this request is unduly oppressive and unreasonable because it requires GE to locate and review vast amounts of information regarding GE's operations in China. *See* Dkt. No. 1-1 at 17. Further, GE claims that this request fails to meet the specificity requirement because it does not identify the facilities, custodians, technologies, or dates about which Defendant seeks such information. *See id.* GE also contends that this request fails to meet the relevancy requirement, arguing that "[e]ven assuming GE's purported need for additional materials providers were relevant to this case (which it is not), Defendant fails to establish *how* GE's existing operations in China would have any bearing on GE's purported need for additional material providers." *Id.* In response, Defendant contends that this request is relevant "as much of the indictment describes how Dr. Zheng was attempting to utilize GE materials for manufacturing seals in China." Dkt. No. 13 at 18. Defendant argues that the Government and GE are aware that GE officials encouraged Defendant to find Chinese-based suppliers for many of its sourced materials, including the seals at issue. *See id.* "This request specifically seeks the GE materials showing the breadth of GE's Chinese-based suppliers to present as part of his defense, to demonstrate that Dr. Zheng's efforts to find Chinese-based suppliers for the seals was a reasonable response by Dr. Zheng to fill a GE supply need." *Id.*

As GE correctly notes, this request is a classic example of an overbroad and irrelevant request that fails under *Nixon*. A request seeking information regarding the fact that GE had, or

has, operations in China, and information related to the technologies they create or service that have nothing to do with the trade secrets at issue in the Indictment, is an exceedingly overbroad request, that would result in largely, if not exclusively, irrelevant material, while creating a significant burden on GE.

Accordingly, the Court grants GE's motion to quash as to this request.

### b. Request No. 12

In his twelfth request, Defendant seeks "[a]ll internal and external documents and communications related to GE Power or GE Aviation's seal suppliers shutting down operations and/or moving operations to Florida from Massachusetts." GE contends that this request fails the specificity requirement and that Defendant fails to establish the relevance of GE's seal suppliers shutting down or moving operations from Massachusetts to Florida, despite GE's having asked for such clarity when Defendant framed this request as a discovery request. *See* Dkt. No. 1-1 at 18 (citation omitted). In response, Defendant contends that this information is relevant to his defense and counters the Government's allegations that Defendant transferred seal plans and searched for Chinese seal suppliers for an illegal purpose. *See* Dkt. No. 13 at 19.

Nothing in Defendant's response changes the fact that this request is unreasonable and oppressive. Further, GE has indicated that it has no brush seal suppliers in China, making it entirely unclear how this request could lead to relevant information. Finally, even assuming that this request could lead to information relevant to Defendant's purported defense, it still fails to satisfy *Nixon* because it is plainly broader than necessary to accomplish this purpose. *See United States v. Skelos*, No. 15-cr-317, 2018 WL 2254538, *3 (S.D.N.Y. May 17, 2018).

### c. Request No. 13

In his thirteenth request, Defendant seeks "[a]n accounting of all GE Power and GE Aviation's equipment and service sales to the Chinese government, Chinese entities and Chinese persons in the last five years." According to GE, this request fails to satisfy the specificity requirement both as to its scope and duration, and that it is unduly burdensome because it "would require GE to perform '[a]n accounting' in response to the request." Dkt. No. 1-1 at 18. According to GE's annual report, its revenues have approached or exceeded $100 billion in each of the last five years, with much of that revenue being earned oversees. *See id.* GE, however, does not account for its revenues by country, and it claims that creating an accounting of all sales by two of GE's largest business divisions in China "would be a massive task." *Id.* In response, Defendant claims that this information "is pertinent to the defense as it will demonstrate[ ] through the subpoenaed GE records that allegations that Dr. Zheng was researching Chinese suppliers, for GE products utilizing GE plans, was wholly consistent with GE's Chinese-based business plan." Dkt. No. 13 at 19. Defendant continues that "GE is in many respects as much a Chinese-based company as a United States company. It does billions of dollars in supplier sourcing to China, and with companies associated directly and/or indirectly with the Chinese [g]overnment. As this request provides a clearly delineated timeframe for a defined category of documents, it is also sufficiently specific." *Id.*

Although this request does request documents relating to a shorter timeframe (five years) as opposed to most of the other requests that seek documents from the entire time Defendant was employed with GE, it is nevertheless an overbroad request. This request would entail GE being forced to provide information on all of its business activities in China, at great cost, and would result in producing an incredible amount of information regarding business transactions that Defendant had no role in. Had Defendant been accused of using his work email address to send

22

the alleged trade secrets to his co-defendant in China, the Court could potentially understand how this information could be relevant. However, the allegations involve Defendant using his work email address to forward encrypted information, hidden within other files, to his personal Hotmail address, which he then forwarded to his co-defendant in China. Moreover, Defendant does not even attempt to narrow this request down in his response to sales of services and equipment to China that he was personally involved with, or by limiting the request to the sale of services or equipment that involve the trademarks at issue in this case.

Accordingly, the Court grants GE's motion to quash as to Request No. 13.

### d. Request No. 14

In his fourteenth request, Defendant seeks "[t]he identification by company name and location of any brush seal vendors used by GE that are currently using a wrapping drum to make brush seals for GE steam turbine, gas turbine and/or aviation." GE contends that this is a civil discovery interrogatory masquerading as a Rule 17(c) subpoena request and that it is unduly oppressive and unreasonable in that it would require GE to perform investigations necessary to create a new document, solely for purposes of this case, that lists names and addresses for vendors across three business lines that manufacture brush seals in a particular way. *See* Dkt. No. 1-1 at 19. Further, GE argues that Defendant has failed to demonstrate how this information would be relevant and admissible in this case. *See id.* According to Defendant, the Government "alleges that the brush seals currently used in wrapping drums are brush seals for GE steam turbine, gas turbine and/or aviation engines have value. To the extent there is any value as will be testified by GE's experts, GE would have vendors who would produce the brush seals and therefore would be able to reveal the value of the brush seals." Dkt. No. 13 at 20.

Again, this request is exceedingly overbroad.  In its response, Defendant could have attempted to limit the scope of its response by perhaps limiting the request to the identification of GE's primary brush seal vendor or even the top two, but instead simply attempts to explain the relevance of this request.  Accordingly, the Court finds that this request is plainly broader than necessary to accomplish Defendant's stated purpose; and, therefore, the Court grants GE's motion to quash as to Request No. 14.

### e. Request No. 15

In his fifteenth request, Defendant seeks "[t]he presentation entitled 'Update on Kazan Fuel Nozzle Fracture and Liberation RCA' by Rachel Hutchinson, presented on 10/18/2017 to the weekly 'CEO Forum' meeting."  In its motion, GE argues that Defendant fails to establish the relevant of this presentation to the charges in the Indictment.  *See* Dkt. No. 1-1 at 19.  In response, Defendant contends that "Request No. 15 is highly relevant because paragraph 79 in the Indictment alleges that Dr. Zheng obtained information on fuel nozzles and that his actions were his attempt to take GE trade secrets.  Dr. Zheng had been invited by GE to presentations for his insight on a nozzle issue with regard to a foreign-purchased GE turbine that had significant nozzle issues.  This request seeks the materials from the presentations attended by Dr. Zheng and others where the nozzle problem was identified and his opinions solicited by the invitation, with the expectation that the presentation's materials match Dr. Zheng's research within GE, so as to be able to contribute to the GE solution."  Dkt. No. 13 at 20.

Contrary to Defendant's assertion, the Court fails to see how his involvement in a root cause analysis for a fuel nozzle located outside of China is in any way relevant to Defendant's alleged transfer of trade secrets to his co-defendant in China.  Accordingly, the Court grants GE's motion to quash as to Request No. 15.

### f. Request No. 16

In his sixteenth request, Defendant seeks "[a]ll internal documents and communications regarding GE's analysis and decision on Dr. Zheng's interest in working on projects outside GE." In its motion, GE contends that it previously provided documents responsive to this request to the Government. *See* Dkt. No. 1-1 at 19 (citation omitted). Further, GE indicates that it has identified additional documents regarding its analysis of Defendant's interest in working on projects outside of GE and it is producing those documents to the defense. *See id.* In his response, Defendant in no way acknowledges that GE has already provided this information and, instead, simply argues that it is relevant. *See* Dkt. No. 13 at 20.

Since GE has already provided this information to Defendant and the Government, GE's motion to quash as to Request No. 16 is denied as moot.

### g. Request No. 17

In his seventeenth request, Defendant seeks "GE standards for awards to employees." In its motion, GE contends Defendant fails to establish the relevance of GE's employee award standards to the charges in the Indictment and that the request also fails to satisfy the specificity requirement. *See* Dkt. No. 1-1 at 19-20. Although not outright stating so, in his response, Defendant appears to limit this request to the standards for awards that he received while at GE. *See* Dkt. No. 13 at 20.

In its reply, GE indicates that it has searched for and identified a document listing Defendant's awards and is producing it to the defense. *See* Dkt. No. 17 at 12. To the extent that GE has now produced documents responsive to this request related to awards Defendant received from GE, the motion to quash is denied as moot in part. However, to the extent that this request

seeks GE standards for awards to employees that Defendant did not receive while employed with GE, the motion to quash is granted in part.

### h. Request No. 18

In his eighteenth request, Defendant seeks "[a]ll materials submitted to the Department of Energy related to any project that Dr. Zheng was the principal investigator, including the submitted proposal, reward letter, signed contract and budget plan." In its motion, GE contends that Defendant has offered no explanation as to why work performed for the Department of Energy would be relevant to the allegations in the Indictment and that the request lacks the requisite specificity. *See* Dkt. No. 1-1 at 20. In his response, Defendant narrows this request to a specific project. *See* Dkt. No. 13 at 21-22. GE has indicated, with this additional specificity, it has identified the project in question and is providing Defendant with copies of the materials submitted to the Department of Energy. *See* Dkt. No. 17 at 12. As such, the Court GE's motion to quash as to Request No. 18 is denied as moot.

### i. Request Nos. 19 & 20

In his nineteenth request, Defendant seeks "[a]ll emails between GE and Dr. Zheng requesting that he assist GE China in finding a new brush seal supplier in China." In his twentieth request, Defendant seeks "[a]ll emails exchanged between Dr. Zheng and GE's IT Department regarding software license usage in connection with MatLab, specifically including but not limited to exchanges regarding the permissible time period for such license usage in 2018." In response, GE contends that these requests fail the specificity requirement and also that, "[i]n any event, such emails between GE and Dr. Zheng, to the extent they exist, would most likely – and most conveniently – be found on the hard drive of Dr. Zheng's GE computer," which is in Defendant's possession. *See* Dkt. No. 1-1 at 20. Further, GE contends that it would be burdensome and

oppressive to require GE to search for responsive documents to this request beyond what has already been provided. *See id.* at 21. "Because of the nature of GE's computer architecture, the only reasonable means for search for emails – particularly historic emails – is by searching the hard drives of the individuals who sent or received such emails. Particularly in the absence of the identities of specific GE employees who participated in the email communications Defendant seeks, it would be impossible for GE to engage in a meaningful further email search." *Id.* In response, Defendant contends that this request is sufficiently specific and material to his defense. *See* Dkt. No. 13 at 22-23. Defendant further contends that "GE in stating that the information responsive to these requests is 'most likely' on the hard drive implies that it may also be found elsewhere. GE's response to Requests Nos. 19-20 are thus not appropriate or acceptable." *Id.* at 23.

Perhaps if this were a civil case could GE's response be deemed "not appropriate or acceptable." This, however, is a criminal case and Rule 17 does not provide for such expansive discovery. As discussed above, when a party moves to quash a subpoena, "the party seeking compliance must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and *not otherwise procurable by the exercise of due diligence*." *Barnes*, 560 Fed. Appx. at 39-40 (citing *Nixon*, 418 U.S. at 699-700) (emphasis added). GE has explained that this information is already likely in Defendant's possession and could be retrieved by his with little effort. Notably absent from Defendant's response is any indication that he is reviewed the hard drives in his possession and that they do not contain the information he seeks. If Defendant and his counsel are unwilling to search for this information that is likely already in their possession, it would be patently unfair to force GE to do their work for them.

Accordingly, the Court grants GE's motion to quash as to Request Nos. 19 & 20.

### j. Request No. 21

In his twenty-first request, Defendant seeks "[a]ll documents related to GE's monitoring of Dr. Zheng's activities on his GE workstation from November 1, 2017 to July 6, 2018."  In his twenty-second request, Defendant seeks "[a]ll GE documents and communications related to Dr. Zheng's activities related to the alleged theft of trade secrets."  And in his twenty-third request, Defendant seeks "[a]ll GE policies on working on outside projects."  In its motion, GE contends that it has already provided the materials in these requests and, in any event, the requests fail to satisfy the specificity requirement insofar as they seek "all" documents related to these various topics.  *See* Dkt. No. 1-1 at 21.  In response, Defendant argues that the Government has not provided him with the information responsive to these requests.  *See* Dkt. No. 13 at 23-24.

Since GE has already provided the information sought in these requests to the Government, to the extent that Defendant is not in possession of this information, counsel should seek relief from the Government.  Since GE has already complied with these requests, its motion to quash as to these request is denied as moot.

### k. Request No. 24

In his twenty-fourth request, Defendant seeks "[a]ll electronic communication between Dr. Zheng and any alleged co-conspirator."  In its motion, GE argues that "[a]ny such emails between Defendant and any alleged co-conspirator – to the extent they exist and were sent or received via Dr. Zheng's GE computer – would be found on Defendant's computer, which, as noted, GE has already provided to the Government."  Dkt. No. 1-1 at 21.  Further, GE contends that, for the same reasons as set forth with respect to Request Nos. 19 and 20, it would be burdensome and oppressive to require it to search for responsive documents to this request beyond what has already been provided.  *See id.* at 21-22.

Since GE has represented that it has already provided this information and because any additional response to this request would be unduly oppressive and burdensome, the Court grants GE's motion to quash as to Request No. 24.

### *l. Request No. 25*

In his twenty-fifth request, Defendant seeks the "[i]dentification of any monitoring software installed on Dr. Zheng's iPhone X (produced as 1B8)." In its motion, GE contends that it did not have any monitoring software installed on Defendant's iPhone X. *See* Dkt. No. 1-1 at 22. Defendant accepts this response and requests no additional relief as to this request. Accordingly, GE's motion to quash is denied as moot as to Request No. 25.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that GE's motion to quash is **GRANTED in part and DENIED as moot in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 27, 2020
        Albany, New York

Mae A. D'Agostino
U.S. District Judge