IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   1:19-CR-00156 (MAD) |
| ) | |
| **v.** ) | |
| ) | |
| **XIAOQING ZHENG** ) | |
| ) | |
| **Defendant.** ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT XIAOQING ZHENG'S MOTION TO PRECLUDE THE COURT FROM
CONSIDERING GENERAL ELECTRIC'S VICTIM IMPACT STATEMENT, THE GOVERNMENT'S
SECOND SENTENCING MEMORANDUM, AND THE GOVERNMENT'S THIRD SENTENCING
MEMORANDUM**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1
PROCEDURAL HISTORY................................................................................................... 1
ARGUMENT .......................................................................................................................... 6

    I.    The Court Should Deny the Defendant's Motion to Preclude the Court from Considering (i) General Electric's Victim Impact Statement and (ii) the Government's Second and Third Sentencing Memorandums ...................................................................... 6

        A.    General Electric's Rights Under the Crime Victims' Rights Act (CVRA) .................... 6

        B.    Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C. Section 3553(a)(2) Require the Court to Consider GE's Victim Impact Statement ..…………………........7

        C.    A Defendant Does Not Have a Right to Confront the Author of a Victim Impact Statement…………………………………………………………………………………7

        D.    The Evidentiary Requirement for Authentication of Evidence at a Sentencing Hearing is Relaxed, and a Statement Need Merely Satisfy a Minimum Threshold of Reliability for Due Process……………………………………………………………………………9

        E.    Victim Impact Statements May by Used by the Court to Rule on a Disputed Sentencing Factor ………………………………………………………..…..…..10

    CONCLUSION..…………………………………….…………………………………...13

# TABLE OF AUTHORITIES

**Cases:**

*United States v. Bolze*,
   2010 WL 2927418 (E.D. Tenn. July 23, 2010) ...................................................................... 10

*United States v. Cook*,
   550 F.3d 1292 (10th Cir. 2008) ................................................................................................ 9

*United States v. Eberhard*,
   525 F.3d 175 (2d Cir. 2008) ..……………………………………………………………..6

*United States v. Egge*,
   223 F.3d 1128 (9th Cir. 2000) .................................................................................................. 9

*United States v. Leekins*,
   493 F.3d 143 (3d Cir. 2007).......................................................................................................9

*United States v. Riccio*,
   529 F.3d 40 (1st Cir. 2008).........................................................................................................9

*United States v. Robinson*,
   482 F.3d 244 (3d Cir. 2007)............................................................................................. 7, 8

*United States v. Santana*,
   908 F.2d 506 (9th Cir. 1990) ............................................................................................. 7

*United States v. Streich*
   987 F.2d 104 (2d Cir. 1993)…………………………………………………………….9

*United States v. Uddin*,
   551 F.3d 176 (2d Cir. 2009)..……………………………………………………………12


**Statutes and Rules:**

18 U.S.C. § 1831………………………………………………………………………..1

18 U.S.C. § 3553 ..................................................................................................................... 7

18 U.S.C. § 3771 ..................................................................................................................... 6

Fed. R. Crim. P. 32 ................................................................................................................. 7

Fed. R. Evid. 1101 .................................................................................................................. 9

The government respectfully submits this memorandum of law in opposition to defendant Xiaoqing Zheng's motion to preclude the Court from considering General Electric's October 7, 2022 victim impact statement, the government's second sentencing memorandum (Dkt. No. 311), and the government's third sentencing memorandum (Dkt. No. 312).  *See* Dkt. No. 314.

## INTRODUCTION

GE's October 7, 2022 victim impact statement should be considered by the Court as it contains (i) evidence of the impact that the defendant's crime of conviction has had on GE; and (ii) evidence that supports the calculation of loss in the presentence report (PSR).  With respect to the latter, the victim impact statement corroborates or amplifies evidence <u>previously admitted at trial</u> of GE's research and development costs, and profits, associated with the trade secrets unlawfully stolen and transmitted by the defendant as part of his conspiracy to commit economic espionage.

Also, the government's second and third sentencing memorandums (Dkt. Nos. 311 & 312), filed on October 11, 2022, should be considered by the Court as they contain <u>responses</u> to the numerous sentencing arguments raised by the defendant in his voluminous defense sentencing memorandum (Dkt. No. 307) filed on October 3, 2022.

For the above reasons and those explained more fully below, the defendant's motion to preclude should be denied.

## PROCEDURAL HISTORY

The trial of this case concluded on March 31, 2022 with the jury returning a verdict of guilty on Count One of the Superseding Indictment which alleged Conspiracy to Commit Economic Espionage, in violation of 18 U.S.C. § 1831(a)(5).  PSR ¶ 1.

1

*Matters Relating to the Calculation of Loss in the Presentence Report (PSR)*

On June 15, 2022, the PSR was released to the parties. Dkt. No. 276. In paragraph 12 of the PSR, Probation found that the loss in the case exceeded $1,500,000 but was less than $3,500,000, and that 16 levels should be added to the offense level. PSR ¶ 12. As support for Probation's position, Probation cited to paragraph 17 of the superseding indictment which alleged that the combined value of GE's trade secrets referenced in the indictment was "millions of dollars, including expenses for research and design and other costs of reproducing the trade secrets that ZHENG avoided by the actions alleged herein." Dkt. No. 140 at ¶ 17; PSR ¶ 2(rrr).

Throughout the government's case-in-chief, numerous government witnesses testified that GE invested millions of dollars in the research and development of the trade secrets at issue in this case, and that a competitor would have to spend millions of dollars to independently figure out the information contained in the trade secrets. *See e.g.*, Tr. at 678-79; 886-87, 892, 894, 929-30; 983. Government witnesses also testified at trial that approximately half of GE Power's annual sales come from the sale of turbine parts and services, including sales and services for parts associated with the trade secrets at issue, and that a significant portion of GE Power's profits come from the sale of turbine parts and services. *See e.g.* Tr. at 29-30; 894. During trial, the aforementioned government witnesses were cross-examined by the defense, yet the witnesses' testimonies did not change, nor were they impeached, as to the millions of dollars invested by GE in the research and development of its trade secrets, and the lucrativeness of GE's turbine parts and services business.

On August 2, 2022, the defense filed a two-page letter noting its objections to a variety of the paragraphs in the PSR. *See* Dkt. No. 314-2. With respect to the defendant's objection as to the loss calculation in paragraph 12 of the PSR, the defendant's entire objection consisted of "Dr. Zheng objects to paragraph 12." *Id*.

On August 23, 2022, a sentencing conference with Probation and the parties was held in order to discuss the defendant's numerous objections to the PSR. During the sentencing conference, the defendant's attorneys said that they would be providing more detail in writing to support their objections to the scoring of the offense in the PSR, to include the PSR's scoring of loss.

On August 26, 2022, more than five weeks prior to the October 3, 2022 sentencing memorandum filing deadline, the government filed its initial sentencing memorandum. Dkt. No. 285. In its initial sentencing memorandum, the government wrote that it believed that the PSR was correctly scored, to include the loss amount. *See* Dkt. No. 285 at pp. 2-3.

On September 9, 2022, the defendant's attorneys filed a page-and-a-half letter that summarized the defendant's arguments as to why the loss amount in the PSR should be zero. *See* Dkt. No. 314-3.

At 6:23 p.m. on October 3, 2022 (the sentencing memorandum filing deadline) the defendant filed a 45-page sentencing memorandum in which he raised numerous arguments and cited more than a dozen cases in support of his argument that the loss amount in the case should be zero. *See* Dkt. No. 307 at pp. 1-11.

At 4:23 p.m. on October 7, 2022, the government received, via e-mail, GE's October 7, 2022 victim impact statement. AUSA Belliss Declaration ¶ 8. At 4:34 p.m. on October 7, 2022, the government e-mailed GE's October 7, 2022 victim impact statement to the defendant's attorneys and to Probation. *Id*. GE's victim impact statement contains (i) evidence of the impact that the defendant's crime of conviction has had on GE; and (ii) evidence that supports the calculation of loss in the presentence report (PSR).

On October 11, 2022, the government filed its second sentencing memorandum. Dkt. No. 311. In the very first paragraph of the memorandum, the government wrote that it was filing "its second sentencing memorandum as a means of <u>responding</u> (emphasis added) to the arguments / objections to the PSR's scoring of the sentencing enhancements raised by the defendant in his August 23, 2022 telephonic conference with Probation, his September 9, 2022 letter of objections, and his October 3, 2022 sentencing memorandum (*see* Dkt. No. 307)." *Id*. at p. 1. In the memorandum, the government responded in detail to the numerous arguments made by the defendant that the loss amount in the case should be zero. In support of the government's arguments that the loss amount was correctly scored in the PSR, the government cited to numerous statements from the trial testimony of various government witnesses, government exhibits that were admitted at trial, and GE's October 7, 2022 victim impact statement.

<u>Matters Relating to Forfeiture</u>

Following the jury's announcement of its verdicts on March 31, 2022, the parties had a brief sidebar conference with the Court as to the issue of the forfeiture allegation in the superseding indictment. AUSA Belliss Declaration ¶ 4. The forfeiture allegation alleged, in particular, that $50,000 in U.S. currency, a Dell desktop computer, and an Apple iPhone X smartphone were to be forfeited upon conviction of Count One. PSR ¶ 4. During the sidebar conference, the defendant's attorneys advised that the defendant would permit the Court to decide issues of forfeiture, and that they (the attorneys) would provide a written brief setting forth the defendant's arguments against forfeiture. *Id*.

As of August 2, 2022 the defendant had not filed any arguments in writing as to forfeiture. On August 2, 2022, as part of the government's response to the defendant's post-trial motions to set aside the guilty verdict, the government *sua sponte* raised the forfeiture issue and made its

4

arguments as to why the $50,000 in currency, the Dell desktop computer, and Apple smartphone should be forfeited. *See* Dkt. No. 282 at pp. 25-28.

The defendant made his first, and only, written argument as to why the $50,000 in currency, Dell desktop computer, and Apple smartphone should not be forfeited in the defense sentencing memorandum filed on October 3, 2022 at 6:23 p.m. – the sentencing memorandum filing deadline. *See* Dkt. No. 30 at p. 39.

On October 11, 2022, the government filed its third sentencing memorandum. Dkt. No. 312. In the very first paragraph of the memorandum, the government wrote that it was filing "its third sentencing memorandum as a means of <u>responding</u> (emphasis added) to the arguments and objections raised by the defendant in his October 3, 2022 Sentencing Memorandum (*See* Dkt. No. 307)." *Id*. at p. 1. In the memorandum, the government responded in detail to the arguments made by the defendant that there should be no forfeiture of any money or items. *See* Dkt. No. 312.

<u>The Defendant's Motion to Preclude</u>

On November 9, 2022, more than four weeks after it had received GE's October 7, 2022 victim impact statement, and the government's second and third sentencing memorandums dated October 11, 2022, the defendant filed the instant motion to preclude the Court from considering GE's victim impact statement and the aforementioned government sentencing memorandums. *See* Dkt. No. 314.

**ARGUMENT**

I.  **The Court Should Deny the Defendant's Motion to Preclude the Court from Considering (i) General Electric's Victim Impact Statement, and (ii) the Government's Second and Third Sentencing Memorandums**

GE's victim impact statement contains (i) information detailing the impact of the defendant's crime of conviction on GE, and (ii) evidence that supports the calculation of loss in the PSR by corroborating or amplifying previously admitted evidence from the defendant's trial. As such, the Court should reject the defendant's arguments that GE's victim impact statement is both inadmissible and unreliable. Moreover, the government's second and third sentencing memorandums should be considered by the Court as the memorandums respond to arguments raised by the defendant in his October 3, 2022 sentencing memorandum that challenge Probation's calculation of loss and the forfeiture of currency and electronic items.[1]

A.  **General Electric's Rights Under the Crime Victims' Rights Act (CVRA)**

The Crime Victims' Right Act (CVRA), codified at 18 U.S.C. § 3771(e), provides that a victim has a right "to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceedings." 18 U.S.C. § 3771(a)(4). A written submission in the form of a victim impact statement has long been an accepted method by which a victim is heard. *See United States v. Eberhard*, 525 F.3d 175, 177 (2d Cir. 2008).

---

[1] In at least two of the defendant's post-trial filings concerning the loss amount as scored by Probation in the PSR, the defendant reminds the Court that it is the government who bears the burden of proving loss by a preponderance of the evidence. *See e.g.,* Dkt. No. 314-3 at p. 2; Dkt. No. 307 at pp. 2-3. The government agrees with the defendant concerning its burden of proof as to loss, yet what seems to be lost on the defense is that the government could not respond in detail to the defendant's arguments on loss until the defendant actually made his arguments in writing.

6

### B.   Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C. Section 3553(a)(2) Require the Court to Consider GE's Victim Impact Statement

GE's victim impact statement also speaks to one of the factors that the district court is required to consider at sentencing pursuant to 18 U.S.C. § 3553(a)(2). Because the GE statement directly addresses "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," it should be considered by the Court in that regard. *See* 18 U.S.C. § 3553(a)(2).

Moreover, the government submits that precluding the Court from considering the statement of General Electric would violate Fed. R. Crim. P. 32, which specifies that a presentence report (PSR) must contain "information that assesses any financial, social, psychological, and medical impact on any individual victim." FRCP 32(d)(2)(B); *see United States v. Santana*, 908 F.2d 506 (9th Cir. 1990) (affirming the district court's consideration of victim impact statements at sentencing in a non-capital case and noting that Fed. R. Crim. P. 32 requires the inclusion of victim impact information in the presentence report).

GE, as the victim affected by the defendant's conspiracy to commit economic espionage, has a right to be heard, and this right may and should be satisfied through the inclusion of GE's victim impact statement as an attachment to the PSR.

### C.   A Defendant Does Not Have a Right to Confront the Author of a Victim Impact Statement

The Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a defendant's sentencing hearing. *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007) (citations omitted). Thus, the inability of the defendant to cross examine, or confront, the victim who authored the victim impact statement does not violate a defendant's right to confrontation because the defendant does not have a right to confrontation

7

at sentencing. *See id*. Because of the different nature and purpose of a sentencing proceeding from a trial proceeding, victim impact statements containing hearsay do not violate the Confrontation Clause of the Sixth Amendment.

At the sentencing hearing, the defendant is free to present his own documentary, witness testimony, or expert testimony evidence to challenge the prior trial testimony of the government's witnesses, the previously admitted government trial exhibits, and GE's victim impact statement. However, the defendant has, to date, offered no evidence that challenges or disputes any evidence that (i) GE invested millions of dollars in the research and development of the trade secrets at issue in this case, and that a competitor would have to spend millions of dollars to independently figure out the information contained in the trade secrets, or (ii) approximately half of GE Power's annual sales come from the sale of turbine parts and services, and that a significant portion of GE Power's profits come from the sale of services and parts. *See e.g.* Tr. at 29-30; 678-79; 886-87, 892, 894, 929-30; 983. Rather, the defendant's position for a loss amount of zero appears to be mostly focused on arguments that the defendant *intended no loss* to GE. *See* Dkt. No. 307 at pp. 2-4.[2] Arguments that the defendant did not intend for GE to suffer a loss do not depend on how much GE invested in developing the trade secrets at issue, or the potential lost profits from the sales of turbine parts that use those trade secrets in the parts' designs and manufacturing. Viewed through such a lens, the defendant's request to subpoena records from GE

---

[2] Although the defendant's sentencing memorandum is focused primarily on intended loss, the defendant's motion before the Court does allege that the GE CAD files for the "Leap Rig" test rig e-mailed by the defendant to Mr. Zhang on September 1, 2017 are not trade secrets and thus GE cannot claim a loss. *See* Dkt. No. 314-1 at ¶ 50; GE-36(a)-(c), GE-31(d). That is not correct. GE mechanical engineer Rahul Bidkar testified at trial that GE considers the "Leap Rig" CAD files, such as CAD file "15.2 CLS.x_t" to be GE's trade secrets. Tr. at 1038-40, 1042. Dr. Bidkar testified that the photograph of the "Leap Rig" (GE-12(u)) is not a trade secret. *See* Tr. at 1032.

8

as to the loss amount scored in the PSR is either a request to go on a fishing expedition or an effort to delay the defendant's sentencing.

      **D.    The Evidentiary Requirement for Authentication of Evidence at a Sentencing Hearing is Relaxed, and a Statement Need Merely Satisfy a Minimum Threshold of Reliability for Due Process**

Rules of evidence that dictate authentication of evidence at trial do not apply to sentencing proceedings. Fed. R. Evid. 1101(d)(3); *accord* U.S.S.G. § 6A1.3(a); *see also United States v. Riccio*, 529 F.3d 40, 47 (1st Cir. 2008) ("At sentencing, the district court is not directly bound by ordinary rules of evidence . . . [and] has broad discretion to accept even hearsay evidence at sentencing as long as the court concludes, with proper support, that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy." (internal citations omitted)).

At sentencing, a district court may rely on hearsay evidence as long as the evidence is sufficiently reliable. *See United States v. Streich*, 987 F.2d 104, 107-08 (2d Cir. 1993); *see also United States v. Cook*, 550 F.3d 1292, 1296, n.4 (10th Cir. 2008); U.S.S.G. § 6A1.3(a) (sentencing court may consider any relevant evidence provided that the information has sufficient indicia of reliability to support its probable accuracy." Moreover, a victim impact statement submitted during sentencing need not even be sworn. *See United States v. Leekins*, 493 F.3d 143, 150 (3d Cir. 2007).

In assessing whether a hearsay statement presented at a sentencing hearing has sufficient indicia of reliability, the Court should consider the totality of the circumstances surrounding the statement, including extrinsic corroborating evidence as well as internal detail and consistency. *See United States v. Egge*, 223 F.3d 1128, 1132, n. 2 (9th Cir. 2000).

9

### E. Victim Impact Statements May be Used by the Court to Rule on a Disputed Sentencing Factor

In *United States v. Bolze*, 2010 WL 2927418, at *3 (E.D. Tenn. July 23, 2010) the district court held that "in determining whether there is sufficient evidence to apply a relevant but disputed sentencing factor (such as a specific offense characteristic), a court may rely on evidence that might be inadmissible in another procedural setting – evidence such as victim impact statements, documents, and the summary testimony of law enforcement agents." (collecting cases)).

In addition to detailing the impact that the defendant's crime of conviction has had on GE, GE's October 7, 2022 victim impact statement corroborates or amplifies evidence previously admitted at trial that establishes (i) the research and development costs incurred by GE for the trade secrets at issue; and (ii) the profits that GE earns from the sale of the turbine parts and services associated with the trade secrets at issue. *See id*.

As an example, GE mechanical engineer John Intile, <u>testified at trial</u> that millions of dollars were spent on the research and development of GE gas turbine blades such as the turbine blades depicted in the GE trade secret files that contained the manufacturing drawings "cutting teeth-109E8755.pdf" and "cutting teeth- 1117E5611.pdf". *See* GE-34(a)-(c), (e)-(f); Tr. at 911-931. These two trade secret files were stolen by the defendant on June 6, 2017 when he e-mailed the files to himself using Axcrypt file encryption, steganography, and his personal Hotmail account. *See* GE-31(b).  Mr. Intile also testified that "a significant portion of our profit" comes from the sale of turbine services and parts.  Tr. at 894.  Moreover, GE mechanical engineer Brian Gutknecht <u>testified at trial</u> that during the 2016-2018 timeframe (the window of the defendant's conspiracy), GE Power's annual sales revenues were between $27 billion and $36 billion, and that approximately 50% of that revenue came from the sale of turbine parts and services.  Tr. at 29-30.

GE's October 7, 2022 victim impact statement corroborates and amplifies the trial testimonies of John Intile and Brian Gutknecht by noting how the turbine blades contained in the trade secret files "cutting teeth- 109E8755.pdf" and "cutting teeth- 1117E5611.pdf" "are some of the most technically advanced and expensive components of the [F class] gas turbine," and that GE "spent millions of dollars and thousands of hours on the design and development . . ." GE VIS at p. 2.  GE's victim impact statement also notes that GE's annual revenue from the sale of the aforementioned turbine blades averages between $25 million and $35 million, and that losing even only 10% of these sales to a potential competitor like the defendant and his Chinese companies who can make the very same turbine blades with the trade secrets stolen by the defendant, translates into potential lost profits of millions of dollars over a span of ten years. *Id*.

As another example, GE mechanical engineer Sean Feeny testified at trial that GE's steam turbines, like the A650, D600 & D650 models, rely on technologies and parts that have been researched, designed, developed and tested over a span of decades and involved hundreds of people and millions of dollars.  Tr. at 678-79.  Mr. Feeny further testified at trial that the brush seal depicted in the GE trade secret file that contained the manufacturing drawing "2-U8668.pdf" had a retail sales price of "likely tens of thousands" of dollars per seal.  Tr. at 706-718, 721; GE-35(a)-(b), (d), GE-31(c).  The defendant transmitted this stolen trade secret to China (via his Hotmail account) when he e-mailed the file to Mr. Zhang on August 22, 2017.  GE-35(a)-(b), (d), GE-31(c).

The defendant's Chinese companies, LTAT and NTAT, were focused, in part, on researching, designing, and manufacturing seals, to include brush seals, for GE steam turbines.  In LTAT's 2017 Project Initiation Application submitted to the Liaoning Province Committee of Industry & Information Technology, admitted at trial as GE-55(b), the defendant and Mr. Zhang highlighted how financially lucrative the steam turbine sealing parts business is when they wrote

11

that the "[c]ost of seals for a large advanced steam turbine is around 300 to 600 thousand USD. Therefore, its seal market has great potential." GE-55(b) at p. 8. Similarly, in the defendant's NTAT "Business Proposal" for "Research and Development Plan of the Key Technology of Mechanical Sealing for Engines," admitted at trial as GE-56(d), the defendant wrote that "the marketing cycle for steam and gas turbine sealing products is very short, especially in the repair market" and that the "cost of sealing for a large advanced steam turbine is between US$300,000 and US$600,000. Therefore, the seal market has great potential!" GE-56(d) at pp. 15-16.

GE's October 7, 2022 victim impact statement corroborates and amplifies the trial testimonies of Sean Feeny and Brian Gutknecht, and the admitted trial exhibits of the LTAT Project Initiation Application (GE-55(b)) and NTAT Business Proposal (GE-56(d)) by noting that the brush seal contained in GE trade secret file "2-U8668.pdf" is one of the many turbine parts that is a "direct result of GE's tens of millions of dollars and thousands of hours of investment into research and development. GE VIS at p. 2.

Based on the trial testimony of the government's witnesses, the government exhibits admitted at trial, and GE's victim impact statement, the loss calculation in this case could easily be in the tens or hundreds of millions of dollars. Yet, Probation has taken a very conservative view of the loss amount in the PSR, and the government has stated that it does not object to Probation's very conservative loss amount as scored in the PSR. In the government's view, the evidence before the Court is an extremely "reasonable estimate" of the loss that the defendant caused or intended to cause as a result of his conspiracy to commit economic espionage. *See United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009); U.S.S.G. § 2B1.1, cmt. n.3(C).

## **CONCLUSION**

The government respectfully requests that this court (i) deny the defendant's motion to preclude the Court from considering GE's victim impact statement; and (ii) deny the defendant's motion to preclude the Court from considering the government's second and third sentencing memorandums. And, for all of the foregoing reasons, and other concerns to be discussed at the time of sentencing in this matter, the government respectfully requests that this Court sentence the defendant to a term of imprisonment of 97 months, a term of supervised release of three years with the special conditions recommended by the United States Probation Office, and a fine of $500,000.00.

Dated: November 21, 2022

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

By:  */s/ Richard Belliss*
Richard Belliss
Assistant United States Attorney
Bar Roll Number: 515295

*/s/ Matthew Chang*
Matthew Chang
Trial Attorney
Bar Roll Number: 702857

**CERTIFICATE OF SERVICE**

    I, Richard Belliss, hereby certify that on November 21, 2022, I electronically filed the foregoing Government's Memorandum of Law in Opposition to Defendant Xiaoqing Zheng's Motion to Preclude with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the defense attorneys of record.

By:     */s/ Richard Belliss*
             Richard Belliss
             Assistant United States Attorney